**GALLOWAY v. UNITED STATES.**

No. 10023.

Circuit Court of Appeals, Ninth Circuit.

Sept. 1, 1942.

468

Alvin Gerlack, of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and Thomas C. Lynch, Asst. U. S. Atty., both of San Francisco, Cal., and Daniel Dillon, Atty., Department of Justice, of Los Angeles, Cal. (Julius C. Martin, Director, Bureau of War Risk Litigation, Wilbur C. Pickett, and Thomas E. Walsh, Attys., Department of Justice, all of Washington, D. C., of counsel), for appellee.

Before GARRECHT and HANEY, Circuit Judges, and ST. SURE, District Judge.

## GARRECHT, Circuit Judge.

Joseph Galloway entered the United States Army in November, 1917, and was honorably discharged April 29, 1919. On or about February 1, 1918, Galloway applied for, and was granted, a policy of war risk insurance in the face amount of $10,-000, on which he paid the premiums to include the month of April, 1919, and which finally lapsed for non-payment of premium on May 31, 1919. On February 11, 1932, Freda Galloway, wife of Joseph Galloway, was granted letters of guardianship over the person and estate of Joseph Galloway by the Superior Court of the State of Cali-

fornia. Claim for insurance benefits was made to the Veterans Administration in June, 1934, and was denied. Joseph Galloway, by his guardian, filed action in the court below alleging that while in the service of defendant the plaintiff contracted "injuries, diseases and disabilities," which have rendered him unable to follow continuously any substantial occupation and that such condition reasonably is certain to continue throughout plaintiff's lifetime. He prayed judgment for the monthly installment benefits in accordance with the terms of the contract. The defendant's answer denied the essential allegations of the complaint; issue was joined, trial was had before a jury, and upon motion of defendant's counsel for a directed verdict in its favor, the motion was granted. The jury returned a verdict in favor of defendant, pursuant to instructions, and judgment was entered in accordance therewith. The plaintiff appeals from this judgment, raising but one question for our consideration, namely, whether the trial court erred in directing a verdict for the defendant.

It appears from the record that after entering the armed forces Galloway was transported to France with the other members of his unit; that he was a cook; that shortly after arriving in France Galloway caused a disturbance in his camp late one night by shouting, "screeching," and swearing; that he became nervous and quarrelsome; that in June, 1918, while standing guard with other soldiers on the left bank of the Marne River in France in the night time, Galloway screamed, "The Germans are coming"; that on this occasion his fellows seized and gagged him; that the Germans were not attacking at the time, nor was there any action then at all. It was testified that at that time Galloway appeared out of his mind—insane. The deposition of one John J. O'Neill was read into evidence in behalf of the plaintiff. O'Neill stated that he was a boyhood chum of Galloway's in Philadelphia; that he was closely associated with Galloway prior to the latter's entrance into the Army and after his discharge; that he first saw Galloway, after discharge, in April or May, 1919, in Philadelphia in their old neighborhood, and Galloway was wearing his Army uniform; that he noted a marked change in the man; that he observed Galloway had crying spells, imagined friends were enemies, would brood, and was moody; that at other times the veteran would appear

and act normally; that he had seen Galloway spit blood.

During the course of the trial it was brought out that Galloway had been convicted under summary court martial for violation of Article of War 61, 10 U.S.C.A. § 1533 (absence without leave) and was sentenced (approved Feb. 2, 1918) to hard labor for two months and forfeiture of two-thirds pay per month for the two months. Galloway enlisted in the United States Navy January 15, 1920, and on July 8, 1920, was separated from service with a bad conduct discharge, in accordance with the sentence of a summary court-martial, which sentence was approved June 2, 1920. He was also court-martialed by a Navy court on April 30, 1920, for "absence from station and duty without leave," to which charge he pleaded guilty; the charge which caused his discharge from the Navy was for a similar offense on May 19, 1920, and for "drunkenness." It is not entirely clear from the record whether the bad conduct discharge was remitted. On December 7, 1920, Galloway enlisted in the United States Army for a second time, following his intervening enlistment in the Navy, and deserted the service May 6, 1922. At no time during either of the two latter enlistments did Galloway make application for war risk insurance.

An Army chaplain who ministered spiritually to the patients at the Fort MacArthur Station Hospital, San Pedro, California, in 1920, 1921, and 1922 testified by deposition in behalf of the plaintiff. The witness stated that Galloway came to his attention early in 1920 when Galloway was a patient for some six weeks in the mental ward at the Fort hospital; that Galloway was then under restraint as a prisoner, for having violated either the 58th, 10 U.S.C.A. § 1530 (desertion) or the 61st (absence without leave) Article of War; that he believed Galloway was then "mentally deranged" because he was usually abnormally depressed; that Galloway manifested no interest in anything except his own problems; that he (Galloway) believed he was being mistreated; that the witness believed Galloway was irrational. The chaplain said that while he did not consider himself an expert, he had been intensely interested in the study of mental cases, had observed hundreds of such cases, and had read widely on the subject. Cross-examination brought out that Galloway was an enlisted man in the Navy early in 1920, and on redirect the chaplain admitted that the year might have been 1921 or 1922, although to the best of his recollection, he believed the year to be 1920.

The deposition of another witness was introduced or read in evidence by the plaintiff—the executive officer of a ship to which Galloway was attached during his enlistment in the Navy. This witness testified that he recalled an enlisted man named Galloway who was aboard ship and who was not amenable to discipline, who caused considerable trouble by disobedience and by leaving the ship without permission, and who was given a bad conduct discharge.

The plaintiff also introduced a deposition of the commanding officer of the Company in which Galloway served for a period during his second enlistment in the Army; this deposition had been taken at the instance of the Government, but was introduced in evidence by the plaintiff without objection. This witness said that he found it necessary to discipline Galloway and concluded he was not dependable; that Galloway drank considerably; that he was a disturbing influence in the Company; that he was convicted by summary court martial for being drunk and disorderly; that Galloway exhibited excessive cheerfulness at times, and at other times, lifelessness or depression; that the witness did not consider Galloway insane in any respect.

A medical witness for the plaintiff testified in his behalf. This witness first saw and examined Galloway a few weeks prior to the trial and testified that Galloway was insane, suffering from "a schizophrenic branch or form of praecox." After discussing the plaintiff's symptoms, reviewing parts of the evidence, having read to him reports of physical and mental examinations of Galloway in 1930 and 1934, the doctor expressed the opinion that Galloway was insane in June or July, 1919, and, as well, in April or May, 1919, and at all times since July, 1918.

After the conclusion of the plaintiff's case the defendant introduced as a witness the Master Sergeant of the Company in which Galloway served in the latter part of 1920 and early in 1921. This witness stated that he remembered Galloway as a member of his Company; that Galloway drank occasionally; that he was court-martialed for drunkenness; that his actions appeared those of a normal man; that he was dependable and not unduly quarrel-

some; that there was no indication to the witness that Galloway might have been insane. When Galloway was discharged from the Navy in 1920, he was given a physical examination, which examination indicated that he had no disabilities. The deposition of the Navy doctor who examined the plaintiff was read in evidence and revealed that the doctor found Galloway was without disability; that Galloway stated to the doctor that he had no war risk insurance; that the doctor discovered no mental defects; that Galloway's conduct was not unusual; that if any defects were apparent, he would have noted them.

It was brought out by the defense that Galloway was married February 14, 1929, which was nearly ten years after his discharge from his first enlistment. It also appeared that at the time of his second enlistment in the Army in December, 1920, Galloway declined to apply for war risk insurance. From September 24, 1918, to January 3, 1919, Galloway had been confined to a base hospital by reason of an attack of influenza. At the time of discharge at the conclusion of his first enlistment Galloway stated that he had no reason to believe he was suffering from the effects of any wound, injury, or disease, or from any disability or impairment of health. The certificate of the examining surgeon, dated April 28, 1919, stated that Galloway had been given "a careful physical examination and it is found that he is physically and mentally sound." At his discharge from the Navy in July, 1920, the plaintiff was examined and "found to be free from all physical disabilities." He was given a complete physical examination prior to his second enlistment in the Army, on December 7, 1920, and was found "mentally and physically qualified."

Following this presentation the counsel for defendant moved for a directed verdict, which was granted, as heretofore noted.

 The extent of our inquiry in a case such as this is stated in United States v. Holland, 9 Cir., 111 F.2d 949, 952, 953:

" * * * It was necessary for the plaintiff to prove, by a fair preponderance of the evidence, that he became totally permanently disabled within the life of the policy, * * *. This burden is not carried by leaving the evidence in the realm of speculation. If the testimony leads as reasonably to one hypothesis as to another,

it tends to establish neither. * * * A Federal Court is not permitted to submit a case to a jury on probabilities or a mere scintilla of evidence, but there must be some substantial evidence offered by the plaintiff to justify submission of the case to the jury. * * * In the examination of this question we are not to weigh the evidence; what our verdict would have been as jurymen ·is immaterial; it is likewise immaterial that the court may be of opinion that the evidence preponderates in favor of the party making the motion—the responsibility of weighing the facts is the jury's. * * * We must assume as established, however, all the facts that the evidence supporting plaintiff's claim reasonably tends to prove, and there should be drawn in his favor all the inferences fairly deducible from such facts. * * * "

To meet the requirement that the plaintiff "must show, by evidence contemporaneous with the life of the policy, the then totality and permanence of his disability," Wise v. United States, 5 Cir., 63 F.2d 307, 308; Cunningham v. United States, 5 Cir., 67 F.2d 714, 715, the plaintiff offered the testimony of three persons, two of them by deposition. Two of the witnesses were comrades in arms, and each testifies to isolated incidents wherein it is said Galloway did not behave in a rational manner. But it is obvious that an instance or two of hysteria or uncontrolled emotion during a period of tension is not proof of total permanent disability by reason of insanity. Similarly, observation by a friend, even of long standing, of the plaintiff's conduct upon return from service, given many years later, and in the knowledge of the present condition of the veteran, is not proof of the total permanent disability of the insured at a period when the policy was in force. This is an example of "the danger of confusing a later condition with an earlier one." United States v. Brown, 1 Cir., 76 F.2d 352, 353. Moreover, no matter how accurate the medical expert's diagnosis of the present condition of the plaintiff, his opinion respecting the totality and permanency of Galloway's disability, if such existed, in April, 1919, amounts to what has been termed a "long range retroactive diagnosis," and rests upon inference and probabilities. "There is nothing in plaintiff's evidence as to his condition when his policy lapsed which affords more than a basis for surmise, speculation, and conjecture that he was totally and permanently disabled then. Verdicts of

juries must have something more firm to rest on than this." United States v. Sandifer, 5 Cir., 76 F.2d 551, 554.

It is an accepted rule that if the evidence presented by a party is positively contradicted by the physical facts, neither the court nor the jury is permitted to give it credence. Deadrich v. United States, 9 Cir., 74 F.2d 619, 622. If the testimony introduced here by the plaintiff were contradicted by the physical facts, the trial judge was bound to direct a verdict for defendant. In Atkins v. United States, 63 App.D.C. 164, 70 F.2d 768, 771, the plaintiff had re-enlisted in the Army subsequently to the expiration or lapsation of his policy of war risk insurance. Affirming a judgment for defendant, the appellate court said, "It is inconceivable that he could have been accepted for this service had he not been reasonably sound in body and mind." In a similar case, United States v. Le Duc, 48 F.2d 789, 793, the Circuit Court of Appeals for the Eighth Circuit used this emphatic language:

" * * * He was twice re-enlisted in the United States Army, passing the medical examinations required, and the statute provides that only able-bodied men shall be permitted to enlist. This proof conclusively precludes the plaintiff from contending that the disability acquired while in the service was permanent. * * *"

We believe that the plaintiff's two enlistments subsequent to the lapse of his policy, and his period of service in the Navy and in the Army, are such physical facts as refute any reasonable inferences which may be drawn from the evidence here presented by him that he was *totally* and *permanently* disabled during the life of his policy. Another failure in appellant's case is the utter lack of any evidence at all respecting Galloway's work record between his last discharge from the Army and the appointment of a guardian over him, a period of nearly ten years. It must be remembered, also, that Galloway married in 1929, long after he is claimed to have become totally and permanently disabled by reason of insanity. In our discussion we have assumed that Galloway has been totally permanently disabled since February 11, 1932, the date of the appointment of the guardian.

Counsel for appellant has ably presented this case, but its inherent weakness, even when considered in its most favorable aspects, requires that the direction of a verdict for defendant by the court below be sustained.

The judgment is affirmed.