Michael **THOMAS** (a minor), suing by Ola Thomas, his mother and Next Friend, and William Coates (a minor), suing by Ruth Coates and Bennie Coates, his mother and father and Next Friends, Plaintiffs,

v.

Arthur **YOUNG** and Gordon Hessel, Defendants.

No. 64–C–203.

United States District Court
E. D. Wisconsin.
March 31, 1968.

William M. Coffey and Thomas M. Jacobson, Milwaukee, Wis., for plaintiffs.

John F. Kitzke and Thomas E. Hayes, Milwaukee, Wis., for defendants.

## OPINION AND ORDER

REYNOLDS, District Judge.

This is an action for money damages under the Federal Civil Rights Act, Title 42 U.S.C. § 1983. This suit arises from an incident which occurred on June 21, 1964. This case was tried to the court without a jury. A transcript of the testimony at the trial was filed, and thereafter the parties filed proposed findings of fact and conclusions of law and post-trial briefs.

The series of incidents which gave rise to this lawsuit occurred in the City of Milwaukee on June 21, 1964. At that time the plaintiffs were fourteen years old. About five o'clock in the morning of June 21, 1964, four young Negro boys were walking the streets of Milwaukee. They were looking into parked cars, apparently with the idea of finding something worth pilfering. An unidentified woman saw the boys peering into car windows. She called to them from her house. The boys became frightened. Two of them ran in one direction and two in another. One of the plaintiffs was in each of the two groups. The boys met again at the intersection of 15th and Wells Streets. Michael Thomas, one of the plaintiffs here, and Eugene Pierce had acquired some fishing rods. Pierce and Thomas explained to William Coates, who is the other plaintiff here, and his brother Bennie that they had gotten the rods from a parked car. Pierce and Thomas took the Coates brothers to the parked car, and while William Coates acted as lookout, Bennie took a large green tackle box and a small silver tackle box from the car. He also removed some tubes of hair cream from the auto and placed them, along with the silver box, into the large green tackle box. The boys left the scene and proceeded walking south when they saw a police squad car approaching. Once again the boys became alarmed, began to run, and dropped the tackle box that was stolen. The boys ran between two houses, and all but William Coates succeeded in jumping over a picket gate. William's foot became caught in between the pickets of the fence as he attempted to jump over the gate. When the police officer who had been chasing the boys on foot caught up with William at the gate, the boy's body was over the fence with his foot caught between pickets in the upper part of the gate. There was a 3 or 4-foot pipe which protruded from the ground on one side of the fence. The defendants argued that he may have struck his head on this pipe and thereby caused his injuries.

## ALLEGED BRUTALITY IN THE ARREST OF WILLIAM COATES

When the officer caught up with William Coates at the gate, he was carrying his service revolver in his hand. The officer grabbed Coates, pulled him back over the gate, and allegedly struck him on the head with the gun. Coates testified that this officer then struck him in the stomach with his clenched fist. The officer then allegedly walked Coates out to the squad car and bent Coates over the trunk of the car while holding the boy's right hand behind the boy's back. The officer then began to question

Coates about the boys he was with that morning. Coates named his brother and said that he did not know the other boys. The officer then put Coates in the squad car. Coates then told the officers the location of the car that he and the other boys had robbed and they drove to it. Coates testified that his head was bleeding and said that he asked the officers if he could wipe off the blood. One of the officers allegedly told Coates to wipe it on his shirt and also called him "a black nigger" and a "bastard." When they arrived at the scene of the robbery, one of the officers got out of the car and talked to the owner of the property that had been stolen. It was at this time that the officer who had been driving allegedly struck Coates in the right eye with his fist. From the scene of the robbery, the officers drove to the Coates residence.

Coates was most unsure of the identity of the police officer who arrested him. Throughout the trial the officers were distinguished by the fact that one was larger and the other had a mustache. Coates testified as follows (page 23 of trial transcript):

"Q Now, Mr. Coates, the officer that caught you, can you describe him for the Court?

"A He was rather large; that's all I know.

"Q There were two officers there when you got in the car?

"A Yes.

"Q And what officer of the two was it that had caught you at the fence?

"A The big one.

"Q The bigger one of the two?

"A Yes.

"Q Did he have a mustache?

"A No.

"Q Are you able, sir, today to identify that man?

"A No, I don't think I could."

The police officers, of course, told a story substantially different from that of the boys. The officers testified that they were radio dispatched to the area of 15th and Kilbourn Streets. They testified that they spotted the boys walking with fishing poles and a tackle box. When the squad car approached, the boys broke and ran. Officer Young, the smaller man with the mustache, left the squad car to chase the boys. Young testified that because his holstered gun was hitting his leg as he ran and since he thought he might lose the gun, he withdrew it. When he caught up with Coates at the fence, he had the gun in his hand. Young testified that he reholstered his pistol before he pulled Coates back over the gate, but he also testified that he could have hit Coates with the gun during the scuffle. Young characterized Coates as very cooperative after his arrest. He made no resistance to the arrest. Young denied forcing Coates to bend over the trunk of the squad car. Young testified that he led Coates to the squad car and they got in and drove to the scene of the robbery. Patrolman Hessel, the larger man, was driving the police car. Hessel denied striking Coates at any time. Both officers denied using excessive force or abusing Coates. They also agreed that neither of them saw any blood at any time on Coates.

## THE ARREST OF THOMAS AND ALLEGED SUBSEQUENT BRUTALITY

Michael Thomas was apprehended at the Coates residence while William Coates was in the squad car with Officer Young. Patrolman Hessel arrested Thomas just as Thomas was arriving at the Coates home. The officers took the two boys to the First District Police Station. Thomas testified that the larger of the officers (Hessel) took him to a back room north of the police assembly room in the First District Station. Hessel then allegedly struck Thomas seven or eight times in the chest and stomach. After this beating, Thomas said that he was interrogated about the address of one of the boys who was involved in the robbery of the car. Thomas told the officer that he knew the house but did not

know the address. The officers then took Thomas alone on an automobile tour of the area in order to find the Pierce house. The officers continued to question Thomas about any hideout that the boys might have. Thomas testified that Young told Hessel to hit Thomas in the mouth if he refused to answer any questions. After more questioning, Hessel allegedly did strike Thomas in the mouth. Hessel then allegedly threatened to take Thomas "back to the room" if he would not tell where the hideout was. The three then returned to the First District Station where they took Thomas to a small room north of the assembly room and told Thomas to stand on an "x" on the floor with his hands behind his back. Thomas testified that Young then struck him in the chest. The officers continued to question Thomas about breaking into homes and snatching purses. Young then allegedly struck him again, this time with sufficient force to throw Thomas against the wall. Then Hessel allegedly threw Thomas across a table. It was at this time that Thomas says his lip was cut. The officers allegedly continued to beat Thomas and call him names. Thomas testified that at no time did he offer any resistance to the officers.

The officers testified that at no time did they abuse either of the plaintiffs. In reference to Thomas, Officer Hessel testified (page 385, trial transcript):

"Q  And after you took him out of the 1st District office back into the assembly room, was he again forced to stand up and asked questions?

"A  He was not forced to stand up and asked questions. We asked him to stand and answer our questions."

Both officers were most sensitive to suggestions that either of them had in any way maltreated the plaintiffs.

## DECISION

This entire case was shrouded with conflicts in testimony. The testimony of the plaintiffs themselves was inconsistent and conflicting on many evidentiary points. The police officers, however, were consistent between themselves as to what happened on June 21, 1964. Obviously the defendants' story differs substantially from that of the plaintiffs.

One of the few certainties of this case is that both boys were injured sometime on or about June 21, 1964. It is also clear that the boys were arrested that morning after being caught breaking into an auto and stealing fishing gear. It is also an agreed fact that Officer Young had his pistol out of the holster when he apprehended Coates. Coates says he hit him with it. The police officer says he only had it out because he thought he might lose it since it was a loose fit in the holster. It is certain that Officer Young had the opportunity to strike Coates with the gun. It is equally clear that Officer Hessel could have caused Thomas' lip to bleed.

■ Police brutality is not easily provable. However, this court cannot enter a money judgment in favor of the plaintiffs unless a preponderance of the evidence shows that the plaintiffs are entitled to that recovery. The plaintiffs have apparently left their case resting on a hope that this court would fill in the evidentiary gaps with the necessary inferences. However, the law is that if testimony leads as reasonably to one hypothesis as to another, it tends to establish neither. Galloway v. United States, 130 F.2d 467 (9th Cir. 1942), 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943).

■ Inferences may be drawn only where there are proven facts in evidence upon which the inferences can be soundly based. A case should never be grounded upon possibilities, since to adopt one possibility over another amounts to mere speculation, guess, or conjecture as to what might have happened. Here, the evidence compels but one conclusion; that is, that the plaintiffs have failed to meet the burden of proving their case by the preponderance of the evidence. Rosemond v. Employers Mutual Casualty Co. of Des Moines, Iowa, 238 F.Supp. 657 (W.D.So.Car.1965).

The foregoing opinion contains this court's findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

For the reasons stated in the above opinion,

It is ordered that the plaintiffs' complaint must be and it hereby is dismissed on its merits.

Counsel for the defendants is to submit an appropriate judgment in accordance herewith.