LeRoy JACKSON, a Minor, by his moth-
er and next of friend, Maudice
Jackson, Plaintiff,

v.

Donald WENZEL and George Jacobi,
Defendants.

No. 64–C–235.

United States District Court
E. D. Wisconsin.

April 5, 1968.

Harvey L. McCormick, Milwaukee,
Wis., for plaintiff.

John J. Fleming, City Atty., by John
F. Kitzke and Thomas E. Hayes, Asst.
City Attys., Milwaukee, Wis., for defend-
ants.

## OPINION AND ORDER

REYNOLDS, District Judge.

### I. BACKGROUND

The plaintiff, LeRoy Jackson, brought
an action for damages against two police
officers for allegedly depriving him of
civil rights pursuant to the provisions
of Title 42 United States Code, §§ 1983
and 1985. Defendants, Donald Wenzel
and George Jacobi, filed an answer put-
ting substantially all the material allega-
tions of the plaintiff in dispute. On
February 14, 1968, the matter was tried
before this court without a jury.

The naming of Officer Donald Wenzel
as a defendant proved to be a simple case
of mistaken identity. The plaintiff him-
self identified Officer James Mamayek
as "Wenzel," and several witnesses, some
of them relying on police records, testi-
fied that Wenzel was not on duty on the
night in question. Officer Wenzel also
took the stand briefly to say that he was
out of town fishing when the incidents
complained of occurred. Since it was un-
disputed that Wenzel was not the correct
target of plaintiff's complaint, this court
granted defendant Wenzel's motion to
dismiss the complaint against him at the
end of trial and took the question of the
verdict as to George Jacobi under advise-
ment. This matter is before us now.

### II. PLAINTIFF'S STORY

On April 12, 1964, the plaintiff, a Ne-
gro, was sixteen years old. On the wit-
ness stand he gave the following account
of the events of that afternoon and eve-
ning.

At about 1:00 or 2:00 p. m., he ar-
rived at the Century Theatre on North
Third Street in Milwaukee, Wisconsin.
He purchased a ticket at the booth, hand-
ed it to the usher, and went in to see the
movie. After watching the movie for
awhile, he left the main part of the the-
atre to go into the lobby and purchase
popcorn. In the lobby, the usher asked
him if he had a ticket stub, and the plain-
tiff said "No." The usher said that
plaintiff would have to leave. When

plaintiff showed no inclination to do so, the usher said that he would call the police. Shortly thereafter two policemen appeared, Officer Jacobi and "Officer Wenzel," who proved in fact to be Officer Mamayek.

The two officers told him that he would have to leave. When the plaintiff complained that he had paid for a ticket, they grabbed him and pulled him out onto Third Street. There, they threw him up on the front end of the squad car. According to the story, Officer Jacobi choked him and Officer Mamayek hit him with his club. Finally, they handcuffed him, put him in the back seat of the car, and took him to the Fifth District police station. On route, Officer Mamayek supposedly said, "Nigger, you have no rights. And we'll prove it to you down at the station."

The officers took plaintiff through the back door of the police station and put him, still handcuffed, in a small room with a desk and chairs. There, they questioned him. The gist of the questioning was about certain burglaries, car thefts, "and strongarm robberies." According to plaintiff, the officers would ask him if he knew anything about these affairs, and then, when he said he knew nothing, they struck him. Plaintiff said that the two officers at various times pulled his hair, hit him on the head with clubs, knocked him to the ground, and kicked him in the stomach, on the leg, and on the shoulder. At no time was he informed of the reasons for his arrest and detention.

Two other witnesses also appeared on behalf of LeRoy Jackson. Plaintiff's mother, Maudice Jackson, testified to picking her son up at the station, taking him home, and observing some bruises and scrapes. Dr. John Terry, a Milwaukee physician, testified that he examined the plaintiff on April 16, 1964, and found contusions and abrasions behind the left ear, abrasions on the left shoulder, and abrasions on the right lower leg.

## III. DEFENDANTS' STORY

Evidence presented by defendants consisted primarily of the testimony of several police officers, some of whom relied on official records, and of Franklin Herron, the usher at the Century Theatre. This evidence painted a somewhat different picture.

Franklin Herron did not see the plaintiff enter the lobby. He first saw plaintiff standing near the entranceway after hearing the door close. Since no one was in the lobby before he heard the door close, he assumed that plaintiff had just entered. Mr. Herron asked for his ticket or at least a ticket stub. When plaintiff failed to produce either and refused to leave, Herron called the police who arrived shortly thereafter.

Officer Jacobi entered first and talked to Mr. Herron while Officer Mamayek parked the squad car. After Mr. Herron explained the problem, Officer Jacobi walked over to plaintiff and asked for a ticket or ticket stub. At this time, Officer Jacobi smelled alcohol on plaintiff's breath and noted that his eyes were watery. When plaintiff failed to produce either, Officer Jacobi told him to leave the theatre, and when the plaintiff did not do so, Jacobi grabbed plaintiff's right arm with his left hand and began walking him toward the exit. About this time, Officer Mamayek seems to have been coming into the theatre. Plaintiff fought to elude Jacobi's grasp, grabbed the officer's lapel, ripped off his badge and a button, and apparently broke one of his fingers. With considerable difficulty, both officers succeeded in dragging plaintiff outside the theatre.

On the sidewalk, the battle continued. A large group of youths gathered, and plaintiff began crying out for help against the policemen. Ultimately, the officers succeeded in handcuffing plaintiff's hands behind his back and thrusting him in the back seat of the squad car. According to the officers, they did not strike plaintiff at this time, neither with clubs, nor fists, nor feet; and they denied making any derogatory or threaten-

ing remarks to plaintiff on the ride to the station. Indeed, they said that plaintiff called them obscene names all the way to the station. They also indicated that plaintiff had been informed of his arrest in the theatre before the struggle began.

At the Fifth District station, they led plaintiff in through the garage entrance and placed him in a small "interrogation room." This room was located on the east side of a corridor running in a north-south direction, approximately through the center of the station. On the west side of the corridor is the main section of the station where several police officers sit at desks performing administrative and clerical duties. Connecting this main section with the intersecting corridor is a door which is customarily kept open. At the time of the incident, the inside of the room was visible through a large transparent window facing the corridor and also through another window on the one door of the room which faced the same corridor. The inference from the pictures and diagrams of the room arrangement at the station, which were introduced in evidence in this case, is that a beating could not occur in the room in which plaintiff was kept without the desk officers knowing what was going on. It would also seem that a beating could not occur without grave danger of observation by civilians transacting business with the desk officers.

Officers Mamayek and Jacobi both flatly deny that LeRoy Jackson was struck in the interrogation room or anywhere else. Officer Jacobi admits to questioning the plaintiff briefly and routinely about the boy's knowledge of certain burglaries, robberies, and car thefts. But he also says that he spent time questioning plaintiff about his alleged drunkenness and that plaintiff freely admitted drinking white port wine shortly before going to the theatre. According to Officer Jacobi, plaintiff also gave the name of the store where the wine was purchased and that of the man who bought it for him. And so there the issue rests.

## IV. CONCLUSION

As is well established, the burden of proof in civil actions for money damages is on the plaintiff, and that means that he must prove each essential element of his claim by a preponderance of the evidence. Rosemond v. Employers Mutual Casualty Co. of Des Moines, Iowa, 238 F.Supp. 657 (W.D.So.Car. 1965). It is the view of this court that plaintiff in this case has not satisfied the requirement.

It is clear that plaintiff had various contusions and abrasions on his body as of April 16, 1964, the date of Dr. Terry's examination. It is probably also true that he had these same bruises when he was released from the police station on the evening of April 12, 1964. But the injuries may well be accounted for by the scuffle at the Century Theatre, and not by a custodial beating. If plaintiff did indeed resist his ejection from the theatre (and there is no dispute that he was unhappy about it), then the force employed by the officers to subdue him would seem not to have been unreasonable.

Moreover, the location of the interrogation room at the Fifth District police station, where plaintiff admits he was confined during the alleged beating, leads this court to believe the story told by the officers. Assuming that Officers Jacobi and Mamayek were inclined to beat plaintiff, we think they would not have chosen a room where they could so easily be observed.

Finally, the simple fact is that plaintiff is not a disinterested party in this suit for damages and that his version of the events of that day is wholly unsupported by any independent witnesses.

As this court pointed out in Thomas v. Young, 282 F.Supp. 52 (E.D. Wis., March 31, 1968), police brutality is not easily provable. A court cannot enter a money judgment in favor of the plaintiff unless a preponderance of the evidence shows that the plaintiff is entitled to that recovery. Under the law a plaintiff may not rest his case on a hope that

the court will fill in the evidentiary gaps with the necessary inferences. The law is that if testimony leads as reasonably to one hypothesis as to another, it tends to establish neither. Galloway v. United States, 130 F.2d 467 (9th Cir. 1942), 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943).

The foregoing opinion constitutes this court's findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

For the foregoing reasons,

It is ordered that plaintiff's complaint must be and it hereby is dismissed on its merits.

Counsel for the defendants is to submit an appropriate judgment in accordance herewith.

Terence F. MacCarthy and Thomas D. Decker, Chicago, Ill., for defendant Clifton Orneal Daniels.

Charles A. Bellows, Joseph A. Ettinger, Chicago, Ill., for defendant Ronald Del Raine.

Edward J. Calihan, Jr., Ronald P. Alwin, Chicago, Ill., for defendant Henry Michael Gargano.

Thomas A. Foran, U. S. Atty., Chicago, Ill., for the United States.