**Mumtaz WALYD, a minor, by his father and next of friend, Khalyd Walyd, Plaintiff,**

v.

**Michael S. KANE, and Gerhard Buelow, Defendants.**

**Tabu WALYD, a minor, by his father and next of friend, Khalyd Walyd, Plaintiff,**

v.

**Michael S. KANE, and Gerhard Buelow, Defendants.**

**Nos. 65–C–100, 65–C–101.**

United States District Court
E. D. Wisconsin.

April 10, 1968.

Sydney M. Eisenberg, Milwaukee, Wis., for plaintiffs.

John J. Fleming, City Atty., by John F. Kitzke and Thomas E. Hayes, Asst. City Attys., Milwaukee, Wis., for defendants.

## OPINION AND ORDER

REYNOLDS, District Judge.

### I. BACKGROUND

The plaintiffs in these cases are Tabu Walyd and Mumtaz Walyd, the two minor sons of Khalyd Walyd who is named in the actions as their father and "next of friend." They are suing two police officers of the City of Milwaukee, Wisconsin, Michael S. Kane and Gerhard Buelow, for damages sustained when the officers allegedly deprived them of certain civil rights under color of law. The statutory authorization for such a suit is found in 42 U.S.C. § 1983, and jurisdiction is based on 28 U.S.C. § 1343.

### II. UNDISPUTED FACTS

The plaintiffs, Tabu and Mumtaz, are darkskinned and of Egyptian descent. At the time of the incident complained of, they were 17 and 15 years of age, respectively. On April 18, 1964, they were walking east on West Chambers Street between North 19th and North 18th Streets in Milwaukee. At a point between 19th and 18th Streets, they were stopped by the two defendants who were in uniform. A scuffle ensued.

Officer Kane struck Tabu on the head several times with his "baton" or police club. Buelow handcuffed Mumtaz and dropped him to the ground. A police wagon was called. The two boys were taken to the Fifth District police station where they were questioned and ultimately released to the custody of their

father. Mr. Walyd, Sr., appeared at the station, was very angry with the police, and apparently created a mild fuss. Subsequent to that, these actions were brought. Beyond the facts mentioned in the above paragraph, the stories of the boys and of the police diverge quite sharply.

### III. STORY OF PLAINTIFFS

The two boys, Tabu and Mumtaz, said they had gone over to the house of another boy, Marcus Hooks, on the afternoon of April 18, 1964. There they had engaged in singing practice in an effort to prepare an act for an amateur variety show to be held at St. Benedict's Catholic Church. After practicing through the late afternoon and early evening, they left the house to go to a restaurant for a sandwich. While proceeding eastward on Chambers Street between North 19th and North 18th, Tabu was suddenly set upon by the two police officers, Kane and Buelow, and beaten with clubs. According to the Walyds, no warning of any kind preceded the attack. Mumtaz was undecided about whether or not he went to his brother's aid, but testified that he was handcuffed, hurled to the ground, and then kicked in the stomach and groin by Officer Buelow. Mumtaz said that Officer Buelow also threatened him, kicked him, and began choking him in a squad car after the arrest. At the police station, Buelow and three other officers beat him in a small room, and Buelow in particular slapped his face. Both boys also said that Buelow had helped with the initial clubbing of Tabu. They admit that Officer Kane at no time struck Mumtaz.

### IV. STORY OF DEFENDANTS

Evidence offered by defendants told a more complete and strikingly different story. According to that evidence, Officers Buelow and Kane were assigned to a squad car operating out of the Fifth District police station. At approximately 10:50 p. m., they received a call to investigate a report of juvenile drinking on the 2900 block of North 20th Street. On that street (which is one and a half blocks and around the corner from the scene of the incident), they found a large group of juveniles milling around the sidewalk and street, making it difficult for traffic to move. They circled the block and found the group breaking up. Then, after proceeding north on North 20th Street again, they turned right (east) onto North Chambers Street. As they turned the corner, they observed a boy in a light jacket, later identified as Tabu, who seemed to them to be staggering.

At this time, the extent to which the two officers could be identified as policemen becomes relevant. According to uncontradicted evidence, the officers were driving a white squad car with "Milwaukee Police Department" written in large letters on both front doors. The car also had a red overhead light that was not operating at the time of the incident. The two officers were both dressed in the conventional uniform of the Milwaukee Police Department, and their badges were prominently displayed on the front of their garments.

So equipped, the officers observed that Tabu and a cluster of two or three other boys began walking east on Chambers. The car followed. As it drew up to the boys, Officer Kane, who was sitting on the passenger's side of the front seat, rolled down the right front window. Officer Buelow, who was driving the vehicle, called out in a loud voice, "You, the boy in the light jacket, we would like to talk to you," or words to that effect. The boys kept walking as the car rolled along, keeping pace alongside them. Officer Buelow called out again; again he was ignored.

At this point, a parked car intervened, and the police car had to go around it. Then, with the police car in the street still keeping pace with the boys on the sidewalk, Officer Kane called out for the boys to stop. Again the officers were ignored. Officer Buelow drove the car a little ahead of the boys, parked it, and Officer Kane got out, taking a position in front of and several feet ahead of the moving group. Officer Kane

pointed to Tabu and said, "You, you're the boy we want to talk to!" Tabu tried to walk past Officer Kane. Officer Kane grabbed him by the arm and began leading him toward the squad car.

Everything then happened so fast that the sequence of events becomes confused. According to the officers, Mumtaz jumped Officer Kane, and Tabu began struggling to evade his grasp. Then Tabu began wildly swinging his arms. Officer Buelow ran out of the squad car to subdue Mumtaz. He did this, according to his testimony, by tripping him and then snapping handcuffs on him while he was down. Officer Buelow emphatically denies kicking Mumtaz then or at any other time. Officer Kane, after vainly trying to snap handcuffs on the struggling Tabu and having taken a number of blows, finally resorted to the use of his club until Tabu stopped fighting and could be restrained by handcuffs.

Responding to a call for help, another squad car and a paddy wagon arrived. All the defendants' evidence—and, indeed, all the evidence in the case except for the testimony of Mumtaz—indicated that plaintiffs were restrained by officers other than defendants once the other police vehicles arrived, that they were transported to the Fifth District station by other officers, and that there was no further physical contact between the two plaintiffs and the two defendants.

## V. CONCLUSION

As this court stated in Thomas v. Young, 282 F.Supp. 52 (E.D.Wis., March 31, 1968):

"Police brutality is not easily provable. However, this court cannot enter a money judgment in favor of the plaintiffs unless a preponderance of the evidence shows that the plaintiffs are entitled to that recovery. The plaintiffs have apparently left their case resting on a hope that this court

would fill in the evidentiary gaps with the necessary inferences. However, the law is that if testimony leads as reasonably to one hypothesis as to another, it tends to establish neither. Galloway v. United States, 130 F.2d 467 (9th Cir. 1942), 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943).

"Inferences may be drawn only where there are proven facts in evidence upon which the inferences can be soundly based. A case should never be grounded upon possibilities, since to adopt one possibility over another amounts to mere speculation, guess, or conjecture as to what might have happened. * * *"

### A. *Liability*

Although the police officers undoubtedly exaggerated the "gentleness" * with which they treated plaintiffs, and though nothing less than absolute candor is to be condoned in a court of law, this court is of the opinion that the evidence offered by defendants, as summarized in the subsection above entitled "IV. Story of Defendants," is a substantially accurate account of events as they actually happened.

### B. *Damages*

It is clear that Tabu was struck several times by Officer Kane's club and that Mumtaz was subdued by physical force. Plaintiffs offered certain evidence, notably their own testimony, to indicate that they had suffered lasting injuries of various sorts, but it is quite clear to this court that they failed to prove such damages by the preponderance of evidence.

### C. *Summary*

Plaintiffs have not proved, by the requisite preponderance of evidence, that they are entitled to the relief they seek. Rosemond v. Employers Mutual Casualty Co. of Des Moines, Iowa, 238 F.Supp. 657 (W.D.S.C.1965).

---

* Officer Buelow testified that he swung his foot behind Mumtaz to trip him, snapped cuffs on him, and then "lowered him gently to the ground." He also testified to being strikingly polite. For instance, he testified that in calling out twice to Tabu to stop, he used roughly these words, "You, the boy in the light jacket, we would like to talk to you. Will you wait?"

The foregoing opinion constitutes this court's findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

For the foregoing reasons,

IT IS ORDERED that plaintiff's complaint in each of the above-entitled actions must be and it hereby is dismissed on its merits.

Counsel for the defendants is to submit an appropriate judgment in each action in accordance herewith.