**Barry Lee HAUSMAN**

v.

**Arthur F. TREDINNICK and Ralph D. Fiorenza.**

**Civ. A. No. 75–2366.**

United States District Court,
E. D. Pennsylvania.

April 20, 1977.

George A. Hahalis, Bethlehem, Pa., for plaintiff.

Margaret E. Anderson, Asst. Atty. Gen., Commonwealth of Pa., Philadelphia, Pa., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, OPINION AND ORDER

TROUTMAN, District Judge.

### I.

### JURISDICTION AND PARTIES

The plaintiff, Barry Lee Hausman, is a citizen of the Commonwealth of Pennsylvania, residing at R. D. # 1, Breinigsville, Pennsylvania. The defendants are Pennsylvania State Police officers engaged in law enforcement activities on behalf of the Commonwealth of Pennsylvania.

Plaintiff seeks damages for personal injuries under and pursuant to the provisions of 42 U.S.C. § 1983 which provides as follows:

"§ 1983. *Civil action for deprivation of rights*

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Jurisdiction is vested in this Court under the provisions of 28 U.S.C. § 1331.

### II.

### DISCUSSION

Alleging a deprivation of his constitutional rights guaranteed under 42 U.S.C. § 1983, the plaintiff originally alleged (1) that he was arrested by the defendants without probable cause and (2) that excessive force was used in the making of the said arrest, said excessive force resulting in the injuries for which he seeks compensation and damages. In the course of the trial it clearly appeared that there was probable cause for the arrest, said cause of action was abandoned and the trial proceeded on the plaintiff's contention that excessive force was used and exerted by the defendants in arresting the plaintiff on the morning of May 24, 1975, at or about 12:30 A.M.

It is well established that freedom from unreasonable interference by police officers is constitutionally guaranteed. *Jenkins v. Averett,* 424 F.2d 1228 (4th Cir. 1970). Misconduct on the part of public police officers to the extent that it infringes on constitutionally-protected rights gives rise to a civil rights action for deprivation of rights under color of state law. *Huggins v. White,* 321 F.Supp. 732 (S.D.N.Y.1970). If a police officer makes an arrest using excessive force, his action is sufficiently cloaked with official authority to satisfy the limitation of this section, and he may be held liable for civil damages to the person he arrested. *Carter v. Carlson,* 144 U.S. App.D.C. 388, 447 F.2d 358 (1971).

Under 42 U.S.C. § 1983, a citizen has a right to recover damages from a police offi-

cer for an arrest that was effected through the use of excessive force.

■ The courts have held that a police officer can make a lawful arrest which is accompanied by excessive force. *Williams v. Liberty,* 461 F.2d 325 (7th Cir. 1972). If a police officer makes a lawful arrest but uses excessive force in making that arrest he may be held liable for damages under § 1983 of the Civil Rights Act. When a police officer uses force which far exceeds that which is reasonable and necessary under the circumstances to make the arrest and also violates standards of decency more or less universally accepted, that conduct clearly stands beyond the pale of that permitted and the officer may be liable for damages to his arrestee. *Howell v. Cataldi,* 464 F.2d 272 (3d Cir. 1972).

■ When a police officer makes a lawful arrest but uses excessive force in making that arrest, the citizen has a right to resist that unlawful arrest and unlawful use of force. *Basista v. Weir,* 340 F.2d 74 (3d Cir. 1965). The courts have held that if a person receives a beating due to his resisting an unlawful arrest, the police are liable for damages to that person under § 1983. *McDonald v. Musick,* 425 F.2d 373 (9th Cir. 1970). Also, if a police officer uses more force than is necessary to defend himself from someone he is arresting he is liable for damages to that person under § 1983. *Williams v. Liberty,* 461 F.2d 325 (7th Cir. 1972). The courts have held that all that is required to impose liability under § 1983 is proof that defendant's acts were intentional. *Howell v. Cataldi, supra.* Therefore, it is noted that strict tort law liability is not controlling under actions brought under § 1983.

■ Under Pennsylvania law, a peace officer is permitted to use force against one who resists an arrest. He is justified in the use of any force which he believes to be necessary to effect the arrest. 18 P.S. § 508.

In *Jones v. Marshall,* 528 F.2d 132, 142 (2nd Cir. 1975), the Court stated that in interpreting § 1983, "the states must be given some leeway in the administration of their system of justice, at least insofar as determining the scope of such an unsettled rule as an arresting officer's privilege for the use of deadly force." In that case, the Court found no liability where a police officer, without firing a warning shot, fatally wounded an unarmed suspect fleeing a stolen car.

Indeed, such leeway has been applied by the Court in *Redding v. Medica,* 411 F.Supp. 272 (W.D.Pa.1976) wherein the Court found that no excessive force was used where plaintiffs attempted to resist arrest and the injuries resulted from the attempt to subdue them. In *Redding,* plaintiff Canon Redding struck defendant Medica and another officer with a sea bag. When the officers attempted to take plaintiff Canon Redding into custody, plaintiff Kenneth Redding interfered with the arrest and wrestled defendant Medica to the ground. Plaintiff Canon Redding then physically resisted arrest. Both plaintiffs were subsequently struck with blackjacks by defendants.

Other courts have, as well, held that an officer may use a reasonable degree of force without incurring liability under § 1983. In *Lamb v. Cartwright,* 393 F.Supp. 1081 (E.D.Tex.1975), the Court found no liability where the plaintiff never actually struck defendant. There, the plaintiff merely pulled away and made movements with his hands that the officer interpreted as threatening. The Court held that defendant's response in striking plaintiff with his fist and knocking him to the ground was reasonable under the circumstances and did not constitute use of excessive force. See also *Jackson v. Wenzel,* 282 F.Supp. 357 (E.D.Wis.1968); *Thomas v. Young,* 282 F.Supp. 52 (E.D.Wis.1968).

Similarly, the Court in *Conklin v. Barfield,* 334 F.Supp. 475 (W.D.Mo.1971) found there was no excessive force used by a police officer who struck plaintiff in the nose, knocking him to the ground when plaintiff merely *attempted* to strike defendant. There, the Court held that:

"* * * In defending himself against attack the (officer) was entitled to act on

reasonable appearance of danger. He was not required to nicely measure or narrowly gauge the force to the amount required from a deliberate retrospective view. * * *"

*Conklin,* 334 F.Supp. at 479.

Guided by the body of law applicable to the issues here involved, we shall proceed to find the facts as determined by the evidence. That certain arrests were made at the time in question and that convictions as to certain of the charges may or may not have followed is irrelevant to our determination of the facts and of the crucial question involved, i. e., whether Officer Ralph D. Fiorenza used excessive force in arresting the plaintiff.[1]

In reaching our findings and conclusions, we note the following very candid statement made by the exceptionally able counsel for the plaintiff:

"Distasteful as it may be for a Judge, who certainly by his very office represents law and order, to make a finding of fact that a State Policeman, who in our community also represents the image of law and order, told an untruth under oath, I would point out to the Court just as Judges in State and Federal Courts point out to juries, you should wipe from your mind any sympathy that you may have for the police officer and consider that as a man in Court he is entitled to no more or less credibility because of his badge than any other man who sits in the witness stand under oath."

See page 12 of plaintiff's Memorandum of Law.

Aware of the admonishment of counsel, we proceed to our findings of fact:

1. The plaintiff, Barry Lee Hausman, is an adult individual residing in Breinigsville, Lehigh County, Pennsylvania, together with his mother, father and sister.

2. The said Hausman residence consists of the second floor of an apartment building across the street from the Breinigsville Hotel.

3. At various times prior to 12:00 midnight on the evening of May 23, 1975, there were various noises erupting from the Breinigsville Hotel and the parking area of the hotel adjacent to the Hausman residence and side yard. In addition to the noises from within and without the bar, one Dale Gore was, at least on one occasion, spinning his tires in the street between the hotel and Hausman residence.

4. On May 24, 1975, at approximately 12:28 A.M., Desk Officer Porter Krisher of the Pennsylvania State Police Barracks at Fogelsville, received a telephone complaint of a disturbance outside the Breinigsville Hotel and dispatched defendant Fiorenza and State Trooper Arthur F. Tredinnick to investigate the complaint.

5. Said complaint was duly recorded on State·Police forms that are completed in the course of the regular business activities of the Desk Officer; said complaint was admitted into evidence for the purpose of showing that a complaint was received by the State Police at 12:28 A.M.

6. The State Police records indicate a report of a noisy condition in the area of the Breinigsville Hotel by an individual who was never identified and whose name, address and phone number appearing on the report later proved to be fictitious.

7. Troopers Tredinnick and Fiorenza responded to the scene at or about 12:30 A.M.

8. At the time Troopers Tredinnick and Fiorenza arrived at the scene, Barry Hausman was standing in his side yard at or near an automobile owned by Dale Gore, together with the said Dale Gore, Roy Chester Rohrbach, and John Kutish.

9. At times relevant to this cause of action, Carl Kressley was standing right by the dividing area of the Hausman yard and hotel parking lot, said area being divided by railroad ties lying end to end along the property line and illuminated by an overhead Pennsylvania Power & Light Company light.

---

1. On January 31, 1977, the Court granted a motion for summary judgment as to Trooper Arthur F. Tredinnick, originally a co-defendant, dismissing Officer Tredinnick as a defendant in this action.

10. Toward the rear of the yard, but still on the side of the house, some 25 feet or so from the Gore vehicle, Donald Gore, Dale's brother, stood speaking with Calvin Isamoyer. Near Calvin and Donald, stood Judy Gore Burian.

11. The troopers pulled into the yard slightly in front of the Gore vehicle, alighted from their vehicle, and approached the plaintiff, Dale Gore, John Kutish, and Roy Rohrbach for purposes of seeking identification. This request for identification was by reason of the fact that there were visible beer cans, and the boys, in the opinion of the troopers, appeared to be under the legal age for drinking in the Commonwealth of Pennsylvania. The plaintiff was, in fact, 19 years of age, and was drinking a can of beer.

12. After stopping their car in the parking area, the troopers together approached the group of youths, and Trooper Tredinnick requested that the youths produce identification.

13. The plaintiff, Hausman, was facing Fiorenza while Tredinnick's attention was to the other boys in general, and Dale Gore specifically.

14. Plaintiff responded with obscenities and ordered the troopers to leave stating that the troopers could no nothing about it since they were on private property.

15. The troopers advised plaintiff and his companions that they were under arrest for underage drinking, that they would not be taken into the police barracks, that a summary citation would be issued to each of them, that the youths were requested to accompany the troopers to the State Police vehicle for the purpose of completing the lengthy citation form.

16. Plaintiff and Mr. Gore became increasingly argumentative, using abusive and profane language, and insisting that they did not have to comply with any requests or instructions from defendants.

17. After continued discussion, Trooper Tredinnick accompanied Mr. Gore to the State Police car.

18. A man, who was later identified as Forrest Hausman, plaintiff's father, appeared at the window of a house adjacent to the parking lot and yelled to the youths that they could not be arrested and that they could leave the scene.

19. Plaintiff then began to walk away. To prevent plaintiff from leaving, defendant Fiorenza stepped in front of the youth and held out his hands, but did not touch the plaintiff.

20. When defendant Fiorenza attempted to block plaintiff's passage, plaintiff grabbed defendant's flashlight and used it to strike defendant on the right shoulder. Upon impact, the flashlight broke, cutting defendant's wrist.

21. Plaintiff continued to offer physical resistance to defendant's effort to place him in custody by flailing out at defendant with both arms.

22. At no time did defendant strike plaintiff. He merely attempted to grab plaintiff about the rib cage to prevent the youth from continuing to strike out at him and to execute a hip throw, as prescribed by the State Police Manual, in order to bring the subject under control.

23. As he executed the hip throw, defendant Fiorenza lost his balance due to plaintiff's continued resistance; defendant and plaintiff fell together to the ground.

24. Realizing that he was falling along with the plaintiff, defendant Fiorenza attempted to have plaintiff land underneath him rather than on top of him so that plaintiff could not escape arrest.

25. Plaintiff landed face up, with his right shoulder striking the ground first and bearing the brunt of the impact resulting in the injuries for which compensation is sought.

26. After the two fell to the ground, plaintiff continued to strike out at defendant Fiorenza and continued to attempt to escape.

27. Having placed Mr. Gore in the rear seat of the State Police vehicle, Trooper Tredinnick turned around and observed defendant Fiorenza's flashlight and its batter-

ies flying in the air. He also observed that plaintiff was flailing his arms at defendant Fiorenza; that defendant Fiorenza attempted to grab plaintiff about the plaintiff's rib cage; and that the two individuals fell to the ground.

28. Seeing that defendant Fiorenza was attempting to handcuff plaintiff who was struggling against defendant, Trooper Tredinnick grabbed his night stick from the front seat of the State Police vehicle and went over to offer assistance to defendant Fiorenza.

29. Trooper Tredinnick placed his night stick on the chest of plaintiff to hold him down so that defendant Fiorenza could handcuff plaintiff.

30. Plaintiff ceased to struggle and defendant Fiorenza was able to turn him over to face the ground.

31. Defendant Fiorenza had pulled one of plaintiff's arms behind his back in order to put on the handcuff when Trooper Tredinnick noticed that Mr. Gore was getting out of the State Police vehicle.

32. Since plaintiff seemed to be under control, Trooper Tredinnick walked back to the vehicle to put Mr. Gore back in the vehicle.

33. In addition, Trooper Tredinnick was apprehensive about the security of the trooper's state-issued shot gun, which was lying on the front seat of the vehicle, because of the number of people milling around and because of what he perceived to be a potentially explosive situation, and he sought to secure the firearm.

34. Defendant, Fiorenza, who was squatting over plaintiff, had managed to place one handcuff on plaintiff when defendant felt Forrest Hausman kick or strike him in the side and grab him about the neck with both hands.

35. With Mr. Hausman, Sr.'s hands tightly around his neck, defendant Fiorenza was pulled to his feet.

36. As a result of said physical intervention, plaintiff was able to get to his feet and run in a northwesterly direction toward the rear of the residence.

37. Upon the escape of plaintiff, Mr. Hausman, Sr. released his hold upon defendant Fiorenza and Trooper Fiorenza gave chase to the youth.

38. Having returned to the State Police vehicle, Trooper Tredinnick turned around and observed Mr. Hausman, Sr. grabbing defendant Fiorenza about the neck.

39. Trooper Tredinnick made a request for assistance on the police radio, he then picked up his nightstick and went to the assistance of defendant Fiorenza.

40. Trooper Tredinnick saw defendant Fiorenza, who was by now giving chase to plaintiff, pushed back by Calvin George Isamoyer. Plaintiff had, at that point, disappeared toward the rear of the residence, never having been re-apprehended by defendant.

41. By the time Trooper Tredinnick reached defendant Fiorenza, Mr. Isamoyer and Mr. Hausman, Sr. had each grabbed an arm of the defendant and were physically preventing him from pursuing plaintiff.

42. Trooper Tredinnick raised his nightstick and ordered the two men to release Trooper Fiorenza.

43. Mr. Isamoyer and Mr. Hausman, Sr. complied with Trooper Tredinnick's order.

44. Shortly thereafter, plaintiff, accompanied by his mother, reappeared from the rear of the residence.

45. Plaintiff complained of injury, and defendant Fiorenza suggested to Trooper Tredinnick that he call for an ambulance.

46. After plaintiff's escape following his father's intervention, there was no further physical contact between plaintiff and defendant Fiorenza.

47. By the time the assisting officers arrived, Troopers Tredinnick and Fiorenza had the situation under control.

48. Because the ambulance was slow in arriving, Troopers Tredinnick and Fiorenza agreed to transport plaintiff to the hospital in their State Police vehicle.

49. Plaintiff, accompanied by his parents, got into the rear seat of State Police

vehicle of Troopers Tredinnick and Fiorenza.

50. The State Police vehicle transporting the Hausmans and Troopers Tredinnick and Fiorenza had gone only a few feet when the ambulance arrived.

51. With the arrival of the ambulance, the troopers stopped their vehicle, and the Hausmans were transferred to the ambulance.

52. The injuries sustained by plaintiff were a small laceration on the back of the head, a separation of the right shoulder, and a greenstick fracture of the right clavicle.

53. Plaintiff was treated and released by the Emergency Room of the Allentown Osteopathic Hospital.

54. Treatment of plaintiff by the hospital consisted of six sutures at the back of the head and putting the injured arm in a sling; in addition, X-rays of the right arm were taken.

55. Plaintiff did not require hospitalization or confinement to bed.

56. Shortly after leaving Breinigsville on May 24, 1975, defendant Fiorenza was treated and released by Dr. Glenn Schantz of the Emergency Room at the Allentown and Sacred Heart Hospital Center.

57. Defendant Fiorenza was treated for contusions, bruises and a minor laceration. He was given a tetanus shot as a preventive measure.

58. The injuries sustained by defendant Fiorenza were sustained when struck on the shoulder with a flashlight by plaintiff.

59. The defendant Fiorenza used against plaintiff only that force necessary to defend himself and to subdue plaintiff after plaintiff physically attacked him in an effort to resist and escape arrest.

60. Defendant Fiorenza did not know plaintiff prior to May 24, 1975, and bore no ill will or malice towards him.

## II.

### CONCLUSIONS OF LAW

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

1. The applicable law constitutionally guarantees the plaintiff freedom from unreasonable interference by police officers.

2. The plaintiff as a private citizen is entitled to recovery of damages where an arrest is effected through the use of excessive force.

3. When a police officer makes an arrest using excessive force, a citizen has a right to resist that unlawful use of force in order to protect himself. *Basista v. Weir,* 340 F.2d 74 (3d Cir. 1965).

4. It matters not whether the arrest was made with or without probable cause, the only issue in this case being whether or not excessive force was used.

5. At all times relevant to this cause of action, there was probable cause to arrest Barry Lee Hausman for drinking underage, a summary offense under the applicable laws of the Commonwealth of Pennsylvania.

6. The force used by Trooper Fiorenza when Barry Lee Hausman turned upon him was not excessive, as defined in cases interpreting § 1983 of the Civil Rights Act. *Williams v. Liberty,* 461 F.2d 325 (7th Cir. 1972).

7. The force used by Trooper Fiorenza was reasonable and necessary under the circumstances.

8. The degree of force exercised by Trooper Fiorenza was reasonable and was not excessive under the circumstances.

9. The plaintiff's constitutional and statutory rights were not violated and he is not entitled to the recovery of damages.