**Howard Blanchard CONKLIN, Plaintiff,**

v.

**S. BARFIELD, Defendant.**

**Civ. A. No. 17676–3.**

United States District Court,
W. D. Missouri, W. D.

July 8, 1971.

William H. Pickett, Kansas City, Mo., for plaintiff.

Karl F. Schmidt, Morrison, Hecker, Cozad, Morrison & Curtis, Kansas City, Mo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, JUDGMENT FOR DEFENDANT

WILLIAM H. BECKER, Chief Judge.

This is an action under the Federal Civil Rights Act, Section 1983, Title 42, United States Code. Jurisdiction is founded on § 1343, Title 28, United States Code. In his original complaint, plaintiff, currently a federal prisoner in Leavenworth Penitentiary, sought declaratory relief and damages of $100,000.00.[1] In his amended complaint, plaintiff seeks actual damages of $100,000.00 for injuries which he claimed to have sustained when he was allegedly struck repeatedly by defendant, a policeman on the Kansas City Police Force, without provocation while defendant was acting under color of state law, making an arrest of plaintiff on September 2, 1968, and punitive damages of $200,000.00.

The case was tried by the Court sitting without a jury on January 11, 1971, and March 29, 1971.[2] Evi-

---

1. The prayer of the complaint read as follows:

    "WHEREFORE: Plaintiff prays that this Honorable Court find that these hostile and overt acts were so committed by the defendant, that plaintiff is entitled to redress, and award the plaintiff judgment in the amount of one hundred thousand ($100,000.00) dollars."

    *       *       *       *       *

    "Plaintiff prays that this Honorable Court find that the Fourth Amendment's guarantee against unreasonable searches and seizures made applicable to these states by the Fourteenth Amendment's due process under color of state law * * * were infringed upon by the hostile and overt acts of the defendant upon plaintiff. Plaintiff further prays that the defendant be found responsible for the natural consequences of his actions * * *. Plaintiff prays that this Honorable Court find that these hostile and overt acts were so committed by the defend-

    ant, that plaintiff is entitled to redress, and award the plaintiff judgment in the amount of one-hundred thousand ($100,000.00) dollars."

    Further, in the complaint, plaintiff specifically invoked "28 U.S.C.A. 2201, 2202." This was the only statute invoked providing for a single, specific type of statutory civil remedy.

2. The Court viewed the original complaint of plaintiff as sounding in equity, see note 1, *supra*, and consequently, on August 25, 1970, entered an order deeming the case a nonjury trial because (1) there was "no demand for jury trial filed within 10 days of the last pleading addressed to the issue as required by Rule 38, F.R. Civ.P." and (2) because:

    "In cases under the Federal Civil Rights Act in which relief of an equitable, extraordinary nature is sought, it has been held that there is no right to trial by jury, Lee v. Crouse (D.Kan.) 284 F.Supp. 541, affirmed (C.A. 10) 396 F.2d 952, although such a right to trial

dence was then offered by the parties, and the following findings of fact are based thereon.

On the evening of September 1, 1968, plaintiff got off work as a "kitchen utility helper." at Lottie's Cafeteria in Kansas City. He proceeded to his apartment at 32 East 12th Street in Kansas City where he went to bed and arose at 9:00 a.m. the next morning. At 10:00 a.m., in the company of two friends, Joan Adams and Frank Dalton, with whom he lived, he went to the Rainbow Club and commenced drinking beer. Plaintiff paused in his drinking to remember that he had promised to help "a lady" move from the Jarboe Hotel. Thereupon, plaintiff left the Rainbow Club and proceeded to the Jarboe, where he was told by the manager that the lady had moved to the Hollywood Hotel. Plaintiff went to the Hollywood Hotel and the manager there reported that the lady was "not in." At about 3:15 on the afternoon of September 2, 1968, plaintiff borrowed a car, and, with a friend named Ron, returned to the Hollywood. According to plaintiff's testimony, the manager of the Hollywood said she was tired of plaintiff's inquiries and threatened to call the police. Plaintiff and Ron then returned to the car and were subsequently stopped at 6th and Washington by defendant and Officer Pendleton, who were answering a complaint made by the manager of the Hollywood Hotel that plaintiff had created a disturbance at the Hollywood and threatened to return later with his friends and "stack" the place up.

At this point, the testimony is conflicting. Plaintiff testified that he was required by defendant to place his hands on the side of the vehicle in the "frisk" position; that defendant asked for plaintiff's driver's license and plaintiff handed over an old, invalid receipt for a fee paid for a driver's license; that defendant asked for the keys to the car; that plaintiff replied that the keys were in the ignition; that defendant inquired again for the keys; that plaintiff's patience had by this time worn thin and he replied: "You must be a deaf motherf_____"; that then defendant struck him in the left eye a blow of such force that it drove him to the ground, his body striking the open

by jury on the issue of damages may exist. Turner v. Fouche (S.D.Ga.) 290 F.Supp. 648, 652 [vacated on other grounds, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567.]"
In the original complaint, "jurisdiction" was invoked under "18 U.S.C.A. 3231," "18 U.S.C.A. 241, 242", "28 U.S.C.A. 2201, 2202," and "42 U.S.C.A. 1983, 1985(3)." Sections 241, 242 and 3231 of Title 18, U.S.C., give rise to criminal jurisdiction only, do not provide any civil remedy and have no application to the Federal Civil Rights Act. Pugliano v. Staziak (W.D.Pa.) 231 F.Supp. 347, affirmed per curiam (C.A. 3) 345 F.2d 797; Agnew v. City of Compton (C.A. 9) 239 F.2d 226, cert. denied, 353 U.S. 959, 77 S.Ct. 868, 1 L.Ed.2d 910; Myers v. Couchara (E.D.Pa.) 313 F.Supp. 873; Quarles v. Texas (S.D.Tex.) 312 F.Supp. 835; Brzozowski v. Randall (E.D.Pa.) 281 F.Supp. 306. As noted above, the Federal Declaratory Judgment Act, Sections 2201–2202, Title 28, U.S.C., were the only statutes cited by plaintiff which are properly deemed remedial. But, "in providing for declaratory judgments, Congress left unaffected the right to jury trial. * * * The right to jury trial in a declaratory judgment action depends, therefore, on whether the action is simply the counterpart of a suit in equity * * * or whether the action is merely an inverted lawsuit." James v. Pennsylvania General Insurance Company, 121 U.S.App. D.C. 251, 349 F.2d 228, 230. Section 1983, Title 42, U.S.C., does not purport to specify any single form of relief, but to provide a basis for "action[s] at law, suit[s] in equity, or other proper proceeding for redress." No claim was stated under § 1985(3). The gist of the action appeared to be to obtain a simple declaration of rights and, although damages are awardable in declaratory judgment actions, "[i]t is not the primary function of the court in a declaratory judgment proceeding to award damages." Allstate Insurance Company v. Guaranty Insurance Exchange of Kansas City (W.D.S.C.) 208 F.Supp. 542, 544. Given these principles, and the absence of any demand for a jury trial, it was proper to deem the case a nonjury trial at that point.

car door on the way down; that plaintiff got up, cursing and demanding to know why he had been struck, and was struck and knocked down again by defendant, getting up the second time somewhere near the rear fender; that shortly thereafter, defendant or Officer Pendleton, or both, said that they found a pistol under the front seat of the car; that plaintiff was arrested and charged with driving while intoxicated, careless and reckless driving, driving without a license, and disturbing the peace; that plaintiff had never attempted to strike the defendant; that he did not move except to get his billfold and cigarettes; that he was "noticeably drunk" but not "sloppily drunk"; that he had consumed some 12 beers by the time of the arrest; that, after being taken by defendant to the Admiral Boulevard Police Station, plaintiff was taken to the interrogation room, where he was again struck by defendant with a steel-bound citation book in the presence of Officer Pendleton, shaken down and subjected to a breathylizer test; that he was not charged with resisting arrest; that he subsequently complained to one Sergeant Rapp at the desk of the mistreatment; that Rapp inquired whether he wished to go to the hospital and plaintiff said "no" that he "only had a bloody nose"; but that, after being taken to detention, plaintiff woke up about 7:00 or 7:30 p.m., bleeding profusely and while being taken to General Hospital; and that he was there treated until September 9, 1968, including an operation by Dr. Fox on September 4, 1968. Plaintiff subsequently pleaded guilty to the three traffic charges and one disturbance charge after his release from the hospital.

The testimony of Jewell O'Dell Bullock, who was serving as manager of the Hollywood Hotel on September 2, 1968, differed from that of plaintiff in that she described his behavior in inquiring about the "lady" who lived at the Hollywood as "belligerent" and abusive. She further testified that plaintiff called on September 2, 1968, inquiring about the presence of a lady named "Penny" who had two children and was separated from her husband; that she informed plaintiff that "Penny" was not in; that, shortly thereafter, plaintiff appeared in person and inquired about "Penny" and was again told that "Penny's" door was padlocked and she wasn't in; that, when plaintiff returned to the Hollywood at 3:30 that afternoon, he was intoxicated and belligerent and threatened the witness with harm, stating, "You haven't seen anything yet. Wait until midnight. I'll be back with some of my friends. I'll be back and stack this place up"; that Mrs. Bullock thereupon called the police as plaintiff and his friend returned to the car and, having had trouble starting the car, commenced to push the car onto Washington from 10th Street, heading it in a northerly direction; that they were apprehended at this point by defendant and Officer Pendleton and Officer Pendleton asked Mrs. Bullock to identify the men, which she did; that, at this time, plaintiff was standing in the "frisk" position with his hands on the car and defendant was in the car working with the ignition and some keys; that defendant then asked plaintiff for the right key and plaintiff "said something smart" and turned around quickly with his fist doubled up (although Mrs. Bullock said she could not see plaintiff's arms moving) and defendant at this point "backhanded" plaintiff on the upper part of his face, saying that he had "asked a civil question and wanted a civil answer"; and that she saw no other blow struck.

Donald Edward Pendleton, the police officer who accompanied defendant to make the arrest, stated that the call received from the dispatcher before the arrest indicated that plaintiff had caused a disturbance at the Hollywood Hotel, was bellicose and possibly armed; that the arrest was made at 6th and Washington; and that the altercation took place when defendant repeatedly asked without success for plaintiff's identification, resulting in plaintiff's attempting to strike defendant; that defendant blocked the attempted blow with

his left hand and hit plaintiff "squarely" in the face with his right hand; that plaintiff was then handcuffed and taken by a "paddy wagon" to the Admiral Boulevard Police Station, where he was in the interrogation room when defendant and Officer Pendleton arrived; and that he did not see defendant strike plaintiff at any time while they were at the Admiral station. Furthermore, according to Officer Pendleton, he saw defendant make out a form charging plaintiff with resisting arrest. This testimony tends to be contradicted by the testimony of the Police Department records custodian that no form 100 (the proper form on which a resisting arrest charge is to be made) in this case could be found in the records.

Defendant testified that, on receiving the call respecting the disturbance at the Hollywood, he was informed that plaintiff might have a knife; that the arrest took place at 6th and Washington; that the car which plaintiff was operating had no license plate, no serial number, and no ignition switch; that he placed plaintiff in a wall search position against the car; that, as he frisked plaintiff and went into a crouched position to do so, plaintiff swung with his fist at defendant, grazing the latter's cheek; that defendant thereupon struck plaintiff on the nose with his right fist, knocking him to the ground; that a pistol was later found in the car and a license plate under some truck tires; that plaintiff had a bloody nose as a result of the blow given him by defendant; and that defendant did not again strike plaintiff at the Admiral station or any other time.

The Medical Reports of General Hospital indicate that the injury suffered by plaintiff was a small left orbital floor fracture which was corrected by surgery performed by a Dr. Stevens on September 4, 1968, from which plaintiff convalesced well.

In applying the rules governing the reception and consideration of evidence to the testimony and evidence in this case, it is concluded that it must be found that defendant struck plaintiff instinctively and in self-defense in response to plaintiff's attempt to strike defendant, who was searching him lawfully, and that, therefore, the force used by defendant in making and completing the arrest of plaintiff was apparently reasonable and necessary. In defending himself against attack the defendant was entitled to act on reasonable appearance of danger. He was not required to nicely measure or narrowly gauge the force to the amount required from a deliberate retrospective view. It is well established under the due process clause of the United States Constitution that a person has a federally protected right to be free of unreasonable and unnecessary force at the hands of police officers making otherwise lawful arrests of them. United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368; Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495; Collum v. Butler (C.A.7) 421 F.2d 1257, 1259-60; Hardwick v. Hurley (C.A.7) 289 F.2d 529. The applicable test of whether the force used is unlawful is stated in 6 C.J.S. Arrest § 13a at p. 613, as follows:

> "The reasonableness of the force used in making an arrest under all the circumstances is a question for the jury [or other trier of fact] and the standard is the conduct of ordinary, prudent men under the existing circumstances."

See also Morgan v. Labiak (C.A.10) 368 F.2d 338, 340. Under that test, it must be concluded that Officer Barfield's actions, under all the circumstances, were actions which would have been undertaken by an ordinary, prudent man. According to the testimony of defendant, Officer Pendleton and Jewell O'Dell Bullock, defendant struck plaintiff a single blow in an attempt to pacify him when he was in a belligerent, defiant, intoxicated condition and when he, furthermore, made some motion toward inflicting a blow on defendant. The only testimony to the contrary is that of

plaintiff himself, who testified that defendant struck him repeatedly, both at the scene of the arrest and at the Admiral station, without provocation other than his obscene remarks respecting defendant's hearing ability. But the force of plaintiff's testimony is weakened by many factors. In addition to his criminal record—at the time of trial, plaintiff was serving a five-year sentence in Leavenworth Penitentiary on a Dyer Act conviction,—there were many inconsistencies between plaintiff's testimony on direct and cross-examination, as well as inconsistencies between plaintiff's direct examination answers and his deposition answers and even, in instances, his pleadings and exhibits. For instance, in his original complaint filed by him pro se in this case, and in his amended complaint, plaintiff alleged that he had been initially struck by defendant in the right eye (rather than the left eye, as his trial testimony and the exhibits showed) and he did not state that he had been struck in the nose, as he stated later. His testimony further showed great variation about the point where the arrest was made. At one time he testified that it was made at 6th and Broadway, at another time he indicated that it may have been at 10th and Broadway. At one point, he testified that, after leaving the Hollywood Hotel, he was able to get the car started at one time, only to have it die later. At another time, his testimony was that the car was never started at any time, but that he and his cohort had just begun pushing it when they were arrested by defendant and Officer Pendleton. For these and other reasons, the Court has determined that greater weight should be accorded to the other, more convincing testimony of record. On the material issues in which a conflict exists, the plaintiff has failed to meet the burden of proving his case by a preponderance of the evidence.

The evidence contained in the Medical reports is consistent with the result. The simple fracture of the left orbital floor and the location of all of plaintiff's injuries about the left eye warrant the conclusion that he was struck by a single, direct blow. There is no evidence in the medical reports to sustain a finding that plaintiff was repeatedly beaten, as he alleges.

Plaintiff urges that, under the holding of Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492, 505, a specific intent to violate the federal civil rights of plaintiff is not necessary to establish a violation of the Federal Civil Rights Act, but rather that the Act, as the Supreme Court stated in that case, "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." But, in Monroe v. Pape, the Supreme Court reaffirmed the holdings in United States v. Classic, *supra*, and Screws v. United States, *supra*. The test therefore remains whether force beyond that which would have been applied by an ordinary, prudent man was used. The evidence in this case fails to warrant a finding that the force was greater than an ordinary prudent man would employ under the circumstances.

Plaintiff also characterizes the testimony of defendant, Officer Pendleton and Jewell O'Dell as "thoroughly contradictory." In some respects, their testimony is divergent. But the testimony of all three is consistent with the finding that defendant struck plaintiff a blow after plaintiff had turned suddenly on defendant and made motions which at least offered the prospect of physical harm to defendant. Defendant therefore was under a reasonable apprehension that he was in danger and was justified in using the apparently necessary force which was used to pacify plaintiff.

Plaintiff, in his post-trial brief, stresses the "absence of documentary proof supporting and proving the resisting arrest charge," implying that the absence of a "resisting arrest" charge on the prescribed form in Police Department records is binding on this Court in

determining whether plaintiff in fact resisted arrest. Plaintiff states:

"The only proof in support of the alleged blow having been delivered by Mr. Conklin, is the testimony of the Defendant and his fellow police officer. Both state that the Defendant arrested, cited and wrote formal arrest reports against the Plaintiff for resisting arrest. However, if such citations and reports would have been submitted as alleged, they would be in the custody of the Kansas City Missouri Police Records Department. Such records are nowhere to be found. If the Plaintiff *had* resisted arrest, swung at Defendant, which he denies, these reports would substantiate the testimony of the Defendant and his cohort."

It is true that the police records custodian testified that no "Form 100," the "resisting arrest" form, had been filed with respect to plaintiff's arrest by defendant and Officer Pendleton on September 2, 1968. Also, there is little doubt that, under the modern view, in the United States courts, absence of an entry in records of regularly conducted activity is admissible "to prove the nonoccurrence or nonexistence of the matter." Rule 8–03, Preliminary Draft of Rules of Evidence for the United States District Courts and Magistrates, 46 F. R.D. 161, 362; United States v. De Georgia (C.A.9) 420 F.2d 889, 892. But

such evidence, even though admissible, is not conclusive on the issue of the occurrence or nonoccurrence of the matter. The preponderance of the evidence in this case, even considering the absence of a form in the Police Department records, shows that plaintiff in fact resisted arrest.

"[P]olice brutality * * * is not easily provable. A court cannot enter a money judgment in favor of the plaintiff unless a preponderance of the evidence shows that plaintiff is entitled to that recovery." Jackson v. Wenzel (W. D.Wis.) 282 F.Supp. 357, 359. The force of a single blow to the face in this case is much less than that approved in that case as not being unreasonable, when the plaintiff's story was that he was choked and struck with a club while resisting ejection from a theatre. See also Daly v. Pedersen (D.Minn.) 278 F. Supp. 88; Rosemond v. Employers Mut. Casualty Co. (D.S.C.) 238 F.Supp. 657; and Walyd v. Kane (E.D.Wis.) 283 F. Supp. 450, all collected in Anno. 1 A.L. R.Fed. at 518–519.

No question of the lawfulness of the arrest is made by the pleadings or briefs.[3]

For the foregoing reasons, it is

Adjudged that judgment be, and it is hereby, entered in favor of defendant and against plaintiff and that plaintiff recover nothing of and from the defendant herein.

---

3. The allegations of the original complaint respecting offenses against "the Fourth Amendment's guarantee against unreasonable searches and seizures" gave way to vague references to violations of the "Fourth, Eighth and Fourteenth Amendments" in the amended complaint. Further, on the evidence taken in this case, the arrest was lawful. Under Missouri law, "Police officers may make arrests without warrant not only when they know of the commission of a recent felony [but also] when a misdemeanor has been committed in their presence." State v. Caffey, Mo., 436 S.W.2d 1. This power to arrest is in accordance with federal standards. United States

v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; Caffey v. Swenson (W.D. Mo.) 318 F.Supp. 704, 708, affirmed (C.A. 8) 438 F.2d 1238. Under the evidence, it is apparent that defendant witnessed plaintiff in a state of intoxication. Plaintiff later pleaded guilty to the charge. No question of a lawful resistance to an unlawful arrest can therefore be made. See Chevigny, The Right to Resist an Unlawful Arrest, 7 Crim.Law Bulletin 189, 203. Further, the search made in this case is not contended to have been not incident to the lawful arrest.