Charline HAMILTON, Administratrix of the Estate of Carey Clayton Yates, Plaintiff-Appellant,

v.

Jess CHAFFIN et al., Defendants-Appellees.

No. 73–3928.

United States Court of Appeals, Fifth Circuit.

Jan. 15, 1975.

John B. Farese, Peggy A. Jones, Ashland, Miss., Robert W. Elliott, Ripley, Miss., for plaintiff-appellant.

Floyd W. Cunningham, Booneville, Miss., Ralph E. Pogue, Aberdeen, Miss., for defendant-appellee.

Before COLEMAN, CLARK and RONEY, Circuit Judges.

CLARK, Circuit Judge:

Plaintiff-appellant, the administratrix of the Estate of Carey Clayton Yates, brought this action to recover damages against the City of Booneville; W. W. Stacy, Chief of Police for the City; City Police Officers Jess Chaffin and Travis McGaughy; Richard Moffitt, radio dispatcher for the City Police Department; and J. D. Burns and Clyde Edge, Jr.,[1] for injuries to and the wrongful death of Carey Clayton Yates,[2] allegedly caused by defendants' negligence and violations of various rights guaranteed an arrestee under federal[3] and state law.[4] The District Court granted the motions of defendants W. W. Stacy and Clyde Edge, Jr. for directed verdicts. A judgment of dismissal with prejudice was entered upon a jury verdict for the remaining defendants. We affirm the trial court's action.

## I. FACTS

Although considerable uncertainty surrounding the factual details of this shocking case remains even after trial, sufficient uncontroverted evidence was adduced during the course of the proceedings to permit a reconstruction of the general chain of events culminating in young Yates' self-inflicted death, on December 24, 1971, while incarcerated in the Booneville city jail. On this tragic Christmas Eve, defendants Chaffin and McGaughy, members of the Booneville police force, received a dispatch directing them to a trailer to investigate a disturbance. As they neared the trailer, the officers noticed a youth, later identified as Carey Yates, age 15, walking along the sidewalk. As the officers watched him, Yates lit and threw what they later determined to be a cherry bomb.[5] They immediately drove toward Yates, but did not use the patrol car's siren or blue

---

1. Defendants Burns and Edge were local citizens who, although having no official authority, participated in the search and incarceration of Carey Yates.

2. The authority of the administratrix to bring this suit is founded upon the Mississippi Wrongful Death Statute. Miss.Code Ann. § 1453 (1958), presently, Miss.Code Ann. § 11-7-13 (1972).

3. Plaintiff contends that decedent's rights to due process and freedom from cruel and unusual punishment were denied by the defendants' actions under color of state law in violation of 42 U.S.C. §§ 1983, 1985, 1986 and 1988.

4. Plaintiff asserts that decedent was deprived of his right under state law to be informed of the nature of the charge against him [Miss.

Code Ann. § 2470 (1968), presently Miss.Code Ann. § 99-3-7 (1972), under this statute, however, it is not necessary to inform the arrestee of the charge when he is arrested during the commission of the offense or on pursuit]; his right to be taken before a magistrate without delay [Miss.Code Ann. § 2473 (1942), presently Miss.Code Ann. § 99-3-17 (1972)]; and the right to reasonable bail [Miss.Const. art. III, § 29]. Appellant also contends Yates was denied the right to make a telephone call after his arrest, alleging such right to be a derivative of the right to be taken before a magistrate and to have reasonable bail imposed.

5. A municipal ordinance makes it a misdemeanor to discharge fireworks within the corporate limits of the City of Booneville.

light to identify themselves. One of the officers called to Yates to halt. Despite this command, Yates dashed behind the front hedge of a nearby residence. The officers leaped from their car and pursued Yates on foot. As Officer Chaffin neared his hiding place, Yates darted from the bush and ran directly into Officer McGaughy, causing both to tumble to the ground. When the officers lifted Yates from the ground, they noticed he was bleeding from the area around his nose and mouth. Yates was immediately taken to the Booneville city jail. After being searched for any remaining firecrackers, Yates was booked and taken to the "drunk" cell, admittedly without being advised of his constitutional rights, afforded an opportunity to call his mother, or given any medical treatment.[6] Minutes later, young Carey Yates was found dead in his cell, having used his belt to hang himself.

■ The alleged deprivation of decedent's rights during his apprehension and detention is the basis for administratrix's claim for damages. Plaintiff asserts that the defendants, acting independently and in concert, applied excessive force during the apprehension and search of Yates, failed to provide the necessary medical treatment and supervision that was required because of the youth's obviously irrational state of mind, and deprived him of other federal constitutional and state statutory rights; and that these wrongful and negligent acts preyed upon Yates' immature mind, destroying his ability to reason, and thus precipitating his suicide.[7] Defendants reply by stating that they used only that amount of force necessary to apprehend and incarcerate Yates because of his inebriated condition and violent reactions[8] and that either his intoxication or some other emotional instability, or a combination of the two, completely unrelated in origin to the defendants' actions, solely caused him to take his own life.

## II. JURISDICTION

### A. Diversity

The original plaintiff was decedent's mother. After the plaintiff had rested her case in the trial court, the complaint was amended to substitute the administratrix, Charline Hamilton, decedent's aunt and a resident of Tennessee, as party-plaintiff. Although this substitution was not requested until the district judge raised a question concerning the court's Section 1983 jurisdiction over the City of Booneville, the court concluded that because of other extenuating circumstances[9] the substitution of this administratrix who had been appointed only one week earlier for the admitted purpose of shoring up the jurisdictional problems which developed, did not con-

---

6. In a receiving room of the jailhouse, defendants Burns and Chaffin held Yates while McGaughy frisked him. The trial judge found the proof to be uncontradicted that Yates resisted the search, and that this resistence caused the officers to apply force against him. Upon completion of the search, which revealed additional fireworks, several defendants escorted Yates to the cell.

7. Under Mississippi law, where the suicide is committed in response to an irresistible impulse, the plaintiff in a wrongful death action may recover if the mental state of the decedent was substantially caused by defendant's intentional wrongful acts. State ex rel. Richardson v. Edgeworth, 214 So.2d 579 (Miss.1968).

8. None of the defendants could testify that they smelled alcohol on the decedent's breath, but another young man who had been with decedent earlier on the fatal evening testified that Yates was one of a party of four that drank over a quart of whiskey. Several other witnesses also testified that decedent acted like he was intoxicated. Additionally, a chemist testified that a blood sample taken from decedent's body revealed an alcoholic content level of 0.15%. Under the Mississippi Motor Vehicle Laws, Miss.Code Ann. § 8175 15 (1972) [presently § 63–11–39 (1972)], this concentration of alcohol in a person's blood raises the presumption that the person is intoxicated. (See Part III, infra).

9. Specifically, the court determined that substitution of the administratrix was legitimate since the decedent's father had an interest in the outcome of the litigation which his estranged wife, decedent's mother, openly admitted that she would ignore, if possible.

stitute a "collusive" appointment, and, therefore, that diversity jurisdiction was established by the substitution. Since we have concluded that the City of Booneville is immune from suit, part V *infra,* it is unnecessary to review the issue of whether the appointment was improper.[10]

### B. 1983

■ Plaintiff asserted a claim cognizable under 42 U.S.C. § 1983 by alleging that the defendants, while acting under color of state law, used excessive force in apprehending and detaining young Yates. The use of excessive force constitutes a violation of the Fourteenth Amendment right to due process, and, as such, is actionable under Section 1983. *E. g.,* Curtis v. Everette, 489 F.2d 516 (3d Cir. 1973), cert. denied, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974); Johnson v. Glick, 481 F.2d 1028 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1974); *cf.* Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951); Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). *Compare* Jackson v. Wenzel, 282 F.Supp. 357 (E.D.Wis. 1968); Daly v. Pedersen, 278 F.Supp. 88 (D.Minn.1967). As stated by the Second Circuit in *Johnson, supra:* "[i]n determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* 481 F.2d at 1033. *See* Tolbert v. Bragan, 451 F.2d 1020 (5th Cir. 1971). Clearly, all of these issues were present in the alleged cause of action here.

■ In view of our conclusion that the plaintiff stated a claim actionable under Section 1983 based upon the claim of excessive force, we pretermit a review of plaintiff's additional contention that defendants' failure to provide medical treatment was also sufficient to state a cause of action under the statute. The trial court's submission of the issue of medical treatment to the jury on the basis of a Section 1983 claim, if error, was harmless. If not presented as a Section 1983 cause of action, the issue would have been properly before the court upon the common law theories of tort and negligence pursuant to its power to exercise pendent jurisdiction over state claims which arise from the same nucleus of operative facts as are involved in the federal claim. *E. g.,* United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Burton v. Waller, 502 F.2d 1261 (5th Cir. 1974) [No. 72–2311, 1974]; Anderson v. Nosser, 438 F.2d 183, 188–189 (5th Cir.), modified on rehearing on other grounds, 456 F.2d 835 (5th Cir. 1972) (en banc).

■ Appellant further asserts that defendants' violation of Section 7185–06 of the Mississippi Code, as amended in 1966 [*presently* Miss.Code Ann. § 43–21– 13 (1972)], which requires that the police obtain prior authorization from the County Youth Court before incarcerating a juvenile,[11] also constituted a denial of

---

10. In Bass v. Texas Power & Light Co., 432 F.2d 763 (5th Cir. 1970), cert. denied, 401 U.S. 975, 91 S.Ct. 1194, 28 L.Ed.2d 324 (1971), this court held that an out-of-state administrator appointed solely for the purpose of "manufacturing" diversity jurisdiction is collusively joined in violation of 28 U.S.C. § 1359 and, therefore, the residence of such administrator will not be considered. Other decisions in accord with *Bass* are: Kenebrew v. Columbia Land and Timber Co., 454 F.2d 1146 (5th Cir. 1972); White v. Lee Marine Corp., 434 F.2d 1096 (5th Cir. 1970); Green v. Hale, 433 F.2d 324 (5th Cir. 1970). *See also* Carribbean Mills, Inc. v. Kramer, 392 F.2d 387 (5th Cir. 1968), aff'd, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969) (collusive assignment); McSparran v. Weist, 402 F.2d 867 (3d Cir. 1968), cert. denied, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969) (collusive appointment of a guardian).

11. Section 7185–06, provides that a juvenile may only be confined in jail if the judge of the youth court determines that the youth's habits or conduct constitutes a menace to

decedent's civil rights as guaranteed under Section 1983. Although it is uncontradicted that the officers failed to comply with the Section 7185–06 procedure, we conclude that this violation of a state-created right does not reach constitutional proportions. It is therefore insufficient to constitute a violation of a right cognizable under Section 1983. Anderson v. Nosser, *supra;* Campbell v. Anderson, 355 F.Supp. 483 (D.Del., 1971). *See* Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1943); Taylor v. City of Jackson, 487 F.2d 213 (5th Cir. 1973); Johnson v. Hood, 430 F.2d 610 (5th Cir. 1970); Dorsey v. N.A.A.C.P., 408 F.2d 1022 (5th Cir.), cert. denied, 396 U.S. 847, 90 S.Ct. 58, 24 L.Ed.2d 97 (1969). Nevertheless, the district court's adjudication upon this issue similarly could be sustained under its discretionary right to take pendent jurisdiction of this closely related state claim.

### III. EVIDENTIARY ERROR

Plaintiff asserts that the district court erred in admitting, over her objection, the testimony of Ernest E. Bailey, chemist from the Mississippi State Chemical Laboratory. Bailey's testimony revealed that tests performed on a sample of blood taken during an autopsy performed on the body of Carey Yates indicated an alcohol concentration of 0.15 percent. Under Mississippi law this concentration of alcohol in a person's blood raises the presumption that the person is intoxicated. See note 8 *supra.* The plaintiff objected to the introduction of this testimony. Since no permission had been given to perform the autopsy by

Yates' survivors, plaintiff took the position that the blood sample had to have been obtained pursuant to Section 7158–04 of the Mississippi Code, as amended in 1960,[12] and that this statute demanded the evidence be excluded. The latter portion of Section 7158–04 provides: "[N]o evidence obtained through any autopsy *performed under the provisions of this section* shall be admitted over the objection of any party in the trial of any civil cause before a court or commission of this state."[13] (Emphasis added). Without specifying any lawful source of authority for the autopsy, appellees retort that this statute was never invoked and is inapplicable. They point out that the county attorney did not petition the appropriate court for proper authorization or otherwise attempt to act under this statutory scheme.

■ The admission of Bailey's testimony raises a crucial issue. It is the only concrete evidence showing that the decedent had consumed a substantial quantity of alcohol prior to his Christmas Eve arrest and death. See note 8 *supra.* Unquestionably it could have been accorded substantial weight by the jury in reaching the conclusion that none of the acts or omissions of any of the defendants proximately caused Carey Yates to commit suicide.[14]

Because no attempt was made to invoke its protective authority, we agree that Section 7158 04 is inapplicable. Additionally, since it is not alternatively contended that the county attorney complied with either of the other two autopsy authorization statutes,[15] we conclude

---

others, or that jailing is necessary to insure attendance at court.

**12.** Section 7158–04, [*presently* § 41–37–9 (1972)], provides, in pertinent part: "A circuit judge, chancellor or county judge . . . may . . . order an autopsy to be performed upon the body of such deceased person (1) upon the petition of a county prosecuting attorney . . . ."

**13.** This exclusionary proviso from § 7158–04 is presently found in § 41–37–19 (1972).

**14.** The jury also could have drawn an inference that decedent's intoxicated condition increased the duty of the defendants to super-

vise such a debilitated youngster while he was in their custody. However, regardless of which inference they may have drawn, this proof of the fact of decedent's blood alcohol content was crucial to a determination of the state of his intoxication. We decline to classify it as harmless.

**15.** The other legal methods of obtaining authorization for an autopsy under Mississippi law are:

(1) by consent of the decedent during lifetime, or by consent of next of kin. Miss. Code Ann. § 7158-08 (1942) [*presently* § 41–37-25 (1972)]; and (2) by petition of certain health officials. Miss.Code Ann. § 7158–09 (1942) [*presently* § 41 -37–23 (1972)].

that both the attorney and the physician performing the autopsy acted entirely outside of and beyond any legal authority.

■ This determination does not, however, under the facts before us, render inadmissible the chemist's testimony based upon the autopsy results for several reasons. First, neither the county attorney nor the performing physician is a party to this litigation. Second, no evidence was adduced which tended to show malice or intentional wrongful actions by either. Third, no evidence was presented which even intimated that the defendants now before this court were in any way involved in procuring or performing the autopsy. Fourth, the analysis of the blood sample taken is the best evidence of the state of Yates' intoxication. In this situation, there would be no deterrent value in refusing to admit such crucial, probative, trustworthy proof. Thus, the corrective principle which undergirds the exclusion of illegally obtained evidence in criminal cases is inapplicable here. Mr. Bailey's scientifically authenticated testimony clearly meets the tests of probativeness, relevancy, and trustworthiness and was

therefore admissible both under state and federal law. *See* Rule 43(a), Fed.R. Civ.P.[16] *See also* Butler v. Southern Pacific Co., 431 F.2d 77 (5th Cir. 1970), cert. denied, 401 U.S. 975, 91 S.Ct. 1196, 28 L.Ed.2d 325 (1971); Dallas Cty. v. Commercial Union Assurance Co., 286 F.2d 388 (5th Cir. 1961); Monarch Insurance Co. v. Spach, 281 F.2d 401 (5th Cir. 1960).

■ Today's holding will not undermine the effectiveness of Section 7158-04 or its exclusionary provision or otherwise encourage the bypassing of legal procedures in general since, upon proper suit, the county attorney and the performing physician may be mulcted in damages for their illegal actions. *See* Annot., 83 A.L.R.2d 955 (1962).[17]

## IV. WEIGHT OF LAW AND EVIDENCE

Plaintiff contends that the verdict of the jury was based upon an erroneous view of the law and was contrary to the overwhelming weight of the evidence.

### A. The Law

■ The trial judge's refusal to grant plaintiff's requested Instruction No. 16 [18]

---

16. Rule 43(a) provides:

In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules. All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. The competency of a witness to testify shall be determined in like manner.

17. In Arnold v. Spears, 217 Miss. 209, 63 So.2d 850, suggestion of error dismissed, 65 So.2d 296 (1953), the Mississippi Supreme Court announced that state's recognition of a legal right to possession of a dead body for

burial and the propriety of a suit for damages based on unlawful interference with such right.

18. Plaintiff's requested Instruction No. 16:

You are instructed that if negligent or wrongful conduct on the part of the defendants herein, or any one of them, so caused any bodily harm to Car[e]y Clayton Yates as to make them or any one of them liable for that harm, then such ones or all of the defendants as you find to be guilty of such conduct are also subject to liability for: (a) fright, shock or other emotional disturbance of Car[e]y Clayton Yates resulting from the bodily harm or from the conduct which cause[d] it, and (b) further bodily harm to Yates resulting from such emotional disturbance. You are further instructed that if you find that negligent or wrongful conduct on the part of the defendants or any one of them so brought about the delirium or insanity of Car[e]y Clayton Yates as to make them or any one of them liable for it, then such ones or all of the defendants as you find to

**912**

is asserted as the crux of the trial court's legal error. The refusal of this instruction is said to have erroneously caused the jury to believe that they initially had to find that the defendants knew or should have known that Yates was likely to commit suicide before they could cast the defendants in damages. The instruction which the court did give, adequately and more clearly placed this concept before the jury.[19] Any error in refusing requested Instruction No. 16 did not affect appellant's substantial rights and thus was harmless. *E. g.,* Almendarez v. Atchison, Topeka & Sante Fe Ry. Co., 426 F.2d 1095 (5th Cir. 1960); Martinez v. Rodriques, 394 F.2d 156 (5th Cir. 1968); Atlantic Coast Line R. Co. v. Burkett, 192 F.2d 941 (5th Cir. 1951); *see* Fed.R.Civ.P. 61.

### B. The Evidence

The administratrix contends that the verdict was contrary to the weight of the evidence. She asserts that the proof required a finding of the use of excessive force and failure to take decedent before a magistrate in violation

of federal and state laws. In order for appellant to recover, however, she had to prove not only a violation of decedent's rights but also that such violation proximately caused Yates to commit suicide.

Under the circumstances established by the testimony in this case, the issue of whether the defendant officers used excessive force or only that amount of force necessary to subdue and search an uncooperative arrestee was properly submitted for jury determination under instructions which met the applicable legal standard. As stated in 6 C.J.S. Arrest § 13a, at p. 613: "The reasonableness of the force used in making an arrest under all the circumstances is a question for the jury, and the standard is the conduct of ordinary, prudent men under the existing circumstances." *See* Morgan v. Labiak, 368 F.2d 338, 340 (10th Cir. 1966); Conklin v. Barfield, 334 F.Supp. 475 (W.D.Mo.1971). The jury was also correctly instructed that the defendants' duty to provide medical attention must be predicated upon the exercise of reasonable care in deciding whether a person under their control needs medical attention. Mississippi ex

be guilty of such conduct are also liable for harm, including suicide, done by Car[e]y Clayton Yates to himself while delirious or insane, if his delirium or insanity

(a) prevented him from realizing the nature of his act and the certainty of risk of harm involved therein, or

(b) made it impossible for him to resist an impulse caused by his insanity which deprived him of his capacity to govern his conduct in accordance with reason.

**19.** The court instructed the jury, in part, as follows:

But must first determine whether the defendants have violated or invaded any of the rights held by the decedent that were protected by federal or state law. And if so, did the violation of those rights have a causal connection with his death? If it did, then you are under a duty to bring in a verdict for plaintiff. * * *

. . . And if you further believe from a preponderance of the evidence that the mental state of Car[e]y Clayton Yates was substantially caused by intentional wrongful acts and that such acts were substantial factors in bringing about the death of

Car[e]y by suicide, then the defendants would be liable to the plaintiff.

. . . And if you believe that the decedent in this case, having been confined to jail, was allowed to commit suicide without proper preventive measures being available, when the defendants knew or in the exercise of ordinary care should have known that the decedent might take his life, then this failure on the part of the defendants would be proximate cause which the law would recognize as a contributing cause to the death of the decedent. In that event, you would bring in a verdict for the plaintiff.

Now, the issues of fact for you to decide in this case, simply put, are whether, taking into account all that happened on this Christmas Eve, these two officers who made the arrest and took the boy to jail, later joined by others, were negligent or failed to exercise the ordinary care that reasonably prudent people would exercise in what happened and whether they should have anticipated a hazard or danger befalling the boy by being left alone in the cell. It was not necessary that they anticipate the exact thing that befell him but that some harm would befall him and act accordingly.

rel. Derrow v. Durham, 444 F.2d 152 (5th Cir. 1971). Similarly, concerning defendants' incarceration of decedent without first taking him before a magistrate, the jury was correctly instructed that the test of liability for his subsequent demise involved a determination of whether the ultimate injury was probably foreseeable at the time of wrongful detention. Johnson v. Greer, 477 F.2d 101 (5th Cir. 1973).

■ The plaintiff further raises the issue of defendants' failure to comply with the Mississippi Youth Court Act[20] which requires a Youth Court directive before a person of Yates' age may be placed in jail. Defendants' failure to act in accordance with the strictures of the Youth Court Act was not submitted to the jury, and the issue is raised for the first time on appeal. Nevertheless, the effect of a violation of the Act was at least implicitly contained in the jury's determination of the consequence of defendants' failure to take Yates before a magistrate. The contradictory evidence adduced at trial conclusively shows that the causal relationship between the omissions of the defendants and Yates' death was clearly a jury issue.[21]

■ Whether Carey Yates committed suicide because of an uncontrollable impulse created by defendants' negligent or intentional acts in depriving him of one or all of the rights secured to an arrestee by federal and state law, or whether the youth's death was proximately caused by an unknown phobia or his inebriated condition which superseded any effect that the defendants' wrongful acts may have had upon the decedent was resolved by the jury's verdict on accurate instructions and will not be disturbed on appeal.

**20.** Miss.Code Ann. § 7185–06 (1972), presently § 43 ·21·13 (1972).

**21.** The plaintiff's claim that a juvenile has a right to greater protection during the interrogation process than is accorded an adult is

## V. MUNICIPAL IMMUNITY

■ The trial court correctly concluded that the City of Booneville was immune from suit brought under Section 1983, e. g., City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Burton v. Waller, 502 F.2d 1261 (5th Cir. 1974) [1974]. The court's further finding that there was diversity between appellant and the city and, therefore, that the city was subject to suit under the common law theory of *respondeat superior* was erroneous. In the absence of express statutory authority the city may not be sued for the torts of its police officers committed while engaged solely in matters pertaining to the police powers of the city, e. g., Twiner v. Jenkins, 257 So.2d 488 (Miss.1972); Simpson v. Poindexter, 241 Miss. 854, 133 So.2d 286 (1961); Anderson v. Vanderslice, 240 Miss. 55, 126 So.2d 522 (1961). The fact that the City of Booneville secured comprehensive general liability insurance does not, in the absence of express statutory authorization, constitute a waiver of the municipality's immunity from liability for torts committed by its employees in performance of those functions, such as police duties, which are governmental in character. *See* Tucker v. City of Okolona, 227 So.2d 475 (Miss.1969); Bishop v. City of Meridian, 223 Miss. 703, 79 So.2d 221, suggestion of error overruled, 223 Miss. 703, 79 So.2d 815 (1955).[22]

## VI. SECTION 1985 AND SECTION 1986 CLAIMS

■ Plaintiff failed to introduce any evidence to support her claim that defendants conspired to deprive Yates of equal protection of the laws or of equal privileges and immunities under the laws as required to recover under Section

inapposite here since the decedent was not interrogated.

**22.** For a thorough analysis of the effect of liability insurance on municipal immunity see Annot., 68 A.L.R.2d 1437 (1959).

1985(3).[23]  Because of this failure to state a claim cognizable under Section 1985(3), appellant may not recover under the interrelated, dependent cause of action under Section 1986, action for neglecting to prevent a known conspiracy under Section 1985.  Dowsey v. Wilkins, 467 F.2d 1022 (5th Cir. 1972).

Affirmed.

**23.**  "The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  Griffin v. Breckenridge, 403 U.S. 88, 101–102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (footnotes omitted).  *See also* Dowsey v. Wilkins, 467 F.2d 1022 (5th Cir. 1972).